## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brian T. D.,                                          Case No. 19-cv-2542 (DTS)

      Claimant,

v.                                                          **ORDER**

Kilolo Kijakazi,
*Acting Commissioner of Social Security*,

      Defendant.

## INTRODUCTION

Claimant Brian T. D. brings this action contesting the denial of his application for disability insurance benefits. He asserts the Administrative Law Judge (ALJ) who decided his claim erred on the merits and lacked the authority to decide it in any event. For the reasons set forth below, the Court finds that because the ALJ was not constitutionally appointed she lacked the authority to decide Claimant's matter. The Court therefore grants Claimant's summary judgment motion, vacates the ALJ's decision, and remands the matter for decision by a properly appointed ALJ.

## BACKGROUND

This matter raises complex questions of statutory and constitutional interpretation arising in a protracted and convoluted procedural history. Consequently, considerable background information is necessary for a full understanding of the Court's decision. That background properly begins with a brief summary of the history surrounding the adoption of the United States Constitution's Appointments Clause and the enactment of the Federal Vacancies Reform Act (FVRA).

**I.      The Appointments Clause & The Federal Vacancies Reform Act**

**A.      The Appointments Clause**

Under the Constitution, the President is responsible for the conduct of the Executive Branch and may not delegate that responsibility or the accompanying obligation to supervise that conduct. *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1978-79 (2021). However, the Framers of the Constitution also understood that the President would necessarily have to rely upon subordinate officers to assist with carrying out the responsibilities entrusted to the Executive. *Id.* at 1979. The Appointments Clause, Article II, Section 2, Clause 2 of the Constitution provides the exclusive process by which the President may appoint "officers of the United States", including those exercising powers of the Executive Branch:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they may think proper, in the President alone . . . .

U.S. Const. art. II, § 2, cl. 2.

Thus, the Appointments Clause divides officers into two classes—principal officers and inferior officers. *United States v. Germaine*, 99 U.S. 508, 509-511 (1879). Principal officers must be appointed by the President with the advice and consent of the Senate. *Arthrex, Inc.*, 141 S. Ct. at 1979. These appointments are commonly referred to as PAS appointments. *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 934 (2017). Inferior officers are appointed in the same manner unless Congress "by Law" authorizes the President, a

court of law, or the head of a department to appoint particular inferior officers without the advice and consent of the Senate. *Edmond v. United States*, 520 U.S. 651, 660 (1997).

At a time when "the power of appointment to offices was deemed the most insidious and powerful weapon of eighteenth century despotism," the Framers limited the appointment power to ensure accountability to political force and the people's will. *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 883-84 (1991). Officers exercising Executive power are accountable "to the public through a clear and effective chain of command down from the President" pursuant to the Constitution's Appointments Clause. *Arthrex*, 141 S. Ct. at 1979 (quotation omitted).

The Appointments Clause serves as a guard against one branch aggrandizing its power at the expense of another branch and preserves constitutional integrity by preventing the diffusion of appointment power. *Freytag*, 501 U.S. at 878. Assigning the nomination power to the President guarantees accountability for the appointee's actions because the "blame of a bad nomination would fall upon the president singly and absolutely." *Arthrex*, 141 S. Ct. at 1979 (quotation omitted). The Appointments Clause adds a degree of accountability in the Senate, which shares in the public blame "for both the making of a bad appointment and the rejection of a good one." *Id.* (quoting *Edmond*, 520 U.S. at 660). The Senate's advice and consent power is thus a critical structural safeguard and serves as a "check upon a spirit of favoritism in the President and a guard against the appointment of unfit characters . . . from family connection, from personal attachment, or from a view to popularity." *N.L.R.B.*, 137 S. Ct. at 935 (quotations omitted). Requiring the Senate's advice and consent is also meant to "promote a judicious choice

of persons for filling the offices of the union." *Edmond*, 520 U.S. at 659 (quotation and alteration omitted).

B.     **Vacancies**

Because the PAS-appointment process may leave a PAS office vacant for a time, the Appointments Clause authorizes the President to "fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session." U.S. Const. art. II, § 2, cl. 3. Even so, not all vacancies occur during the recess of the Senate and the ordinary process of Senate confirmation, even while in session, may necessarily leave a PAS appointment vacant for a considerable period. As a result, Congress has historically given the President limited authority to appoint officials to temporarily perform the functions of the vacant PAS office without Senate approval. *N.L.R.B.*, 137 S. Ct. at 935. In 1792, Congress authorized the President to appoint "any person or persons" to fill specific vacancies in the Departments of State, Treasury, and War. *Id.* (citing Act of May 8, 1792, ch. 37, § 8, 1 Stat. 281). Congress initially allowed those acting officers to serve until a permanent officeholder was in place, but later limited the acting service to six months. *Id.* (citing Act of Feb. 13, 1795, ch. 21, 1 Stat. 415).

In 1868, Congress passed the Vacancies Act to expand the number of PAS offices the President could fill with acting officers. *Id.* (citing Act of July 23, 1868, ch. 227, 15 Stat. 168; Act of Feb. 20, 1863, ch. 45, 12 Stat. 656). The Vacancies Act constrained the authority to appoint "any person or persons" to a default rule that the "first or sole assistant . . . shall" perform the functions of the vacant office, with an exception allowing the President to appoint someone already serving in another PAS office. *Id.* The

4

Vacancies Act also reduced the allowable acting service from six months, generally authorizing only ten days of acting service. *Id.* Congress later allowed acting service for 30 days. *Id.* (citing Act of Feb. 6, 1891, ch. 113, 26 Stat. 733).

In the 1970s and 1980s, conflict over the Vacancies Act arose between the Executive Branch's Department of Justice and the Legislative Branch's Comptroller General. *Id.* The branches disagreed on whether the head of an Executive agency had independent authority apart from the Vacancies Act to temporarily fill vacant offices. *Id.* Congress amended the Vacancies Act to clarify that the Act applies to such agencies. *Id.* at 936. In the amendment Congress also lengthened the period of allowable acting service to 120 days and added a provision that suspended the running of the 120 days during the period a Presidential nomination was pending Senate confirmation. *Id.*

### C. The Federal Vacancies Reform Act

"By 1998, approximately 20 percent of PAS offices in Executive agencies were occupied by temporary designees, most of whom had served beyond the 120-day limitation period[.] . . . Perceiving a threat to the Senate's advice and consent power, [Congress] replaced the Vacancies Act with the FVRA." *Id.* (quotation omitted). The FVRA's purpose is "to create a clear and exclusive process to govern the performance of duties of offices in the Executive Branch" that are filled through the PAS process. S. Rep. 1, No. 105-250, 105th Cong., 2nd Sess. 1998, 1998 WL 404532 (July 15, 1998) (herein "Senate Report"). The FVRA provides that if an Executive agency's PAS officer dies, resigns, or is otherwise unable to perform the functions and duties of the office, the first assistant to that office "shall" perform those functions and duties. 5 U.S.C. § 3345(a)(1). The President may choose to appoint a different person who meets certain criteria to

perform those functions and duties. 5 U.S.C. § 3345(a)(2)-(3). The acting officer may *temporarily* perform "any function or duty of the applicable office" established by statute or regulation and required to be performed by the applicable officer. *Id.* §§ 3345(a)(1)-(3), 3348(a). The FVRA limits a person's service as an acting officer, stating the person serving in that capacity may serve:

> (1) for no longer than 210 days beginning on the date the vacancy occurs; or

> (2) . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

*Id.* § 3346(a). Sections 3345 and 3346 are the exclusive means for temporarily authorizing an acting officer to perform the functions and duties of any PAS office unless a statutory provision expressly authorizes otherwise or the President fills a vacancy during the Senate recess. *Id.* § 3347(a). Unless an officer or employee is performing the functions and duties in accordance with §§ 3345, 3346, and 3347:

> (1) the office shall remain vacant; and

> (2) in the case of an office other than the office of the head of an Executive agency . . . only the head of such Executive agency may perform any function or duty of such office.

*Id.* § 3348(b). In general, "any function or duty of a vacant office" performed by a person not properly serving under the statute "shall have no force or effect" and may not be ratified. *Id.* § 3348(d); *N.L.R.B.*, 137 S. Ct. at 937.

It is against this Constitutional and statutory backdrop that the issue of the ALJ's authority in this case arises. Again, however, a detour into history—this time regarding the appointment of the Acting Commissioner of the Social Security Administration (SSA)—is necessary.

## II.    The Appointment of Acting Commissioner Berryhill

In 1935, Congress responded to the Great Depression by enacting the Social Security Act. *Smith v. Berryhill*, 139 S. Ct. 1765, 1771 (2019). The program is administered by the SSA. *Id.* The SSA Commissioner and Deputy Commissioner must be PAS appointed. 42 U.S.C. § 902(a)(1), (b)(1). The Deputy Commissioner "shall be Acting Commissioner . . . unless the President designates another officer of the Government as Acting Commissioner, in the event of a vacancy in the office of the Commissioner." *Id.* § 902(b)(4).

On February 13, 2013, SSA Commissioner Michael Astrue resigned. *Social Security Commissioners*, Social Security Historical Information, https://www.ssa.gov/history/commissioners.html (last visited January 11, 2022). The Deputy Commissioner, Carolyn Colvin, became Acting Commissioner. *Id.* In December 2016, President Barack Obama issued a memorandum providing an order of succession within the SSA that placed the Deputy Commissioner of Operations (DCO) first in line to serve as Acting Commissioner should the positions of Commissioner and Deputy Commissioner both become vacant. *Memorandum Providing an Order of Succession Within the Social Security Administration*, 81 Fed. Reg. 96337, 2016 WL 7487744 (Dec. 23, 2016) (herein Succession Memo). This 2016 Succession Memo revoked a 2014 memorandum that also listed the DCO as first in line. *See Memorandum Providing an Order of Succession Within the Social Security Administration*, 79 Fed. Reg. 63805, 2014 WL 5388104 (Oct. 17, 2014).

On January 20, 2017, Donald Trump became the 45th President of the United States. Acting Commissioner Colvin resigned the same day.[1] The DCO of the Social Security Administration, Nancy Berryhill, began serving as Acting Commissioner because the positions of Commissioner and Deputy Commissioner were both vacant. B-329853, *Violation of the 210-day Limit Imposed by the Vacancies Reform Act of 1998— Commissioner, Social Security Administration*, Mar. 6, 2018, at 1, https://www.gao.gov/assets/700/690502.pdf (herein GAO Report); *see also* Def. Supp. Brief 4, Oct. 25, 2021, Dkt. No. 61.

On March 6, 2018, the General Accountability Office (GAO) reported that Berryhill's service as Acting Commissioner under the FVRA had expired on November 16, 2017[2] and that her service after that date violated the FVRA. GAO Report 2. The GAO Report stated Berryhill could not use "Acting Commissioner" as her title but could—as DCO—continue to perform **delegable** functions and duties of the Commissioner's position. *Id.* Shortly thereafter, on April 17, 2018, President Trump nominated Andrew Saul to be SSA's Commissioner. Def. Supp. Brief 4, 5 n.3, Oct. 25, 2021. Berryhill purportedly then resumed her service as Acting Commissioner until Saul took office on June 17, 2019.[3] *Id.* The validity of this second period of Berryhill's service—both under the Constitution and the FVRA—lies at the heart of the issues before this court.

---

[1] Colvin had been Acting Commissioner for 1437 days total. On June 20, 2014, while Colvin served as Acting Commissioner, President Obama nominated her to be SSA Commissioner, however the nomination was never approved by the Senate.

[2] The GAO noted the FVRA's 210-day limitation is extended by 90 days in the year of a transitional Presidential inauguration when the vacancy existed during the 60-day period beginning on the transitional inauguration date. 5 U.S.C. § 3349a(b). 300 days from January 20, 2017 is November 16, 2017.

[3] Saul's first nomination was returned by the Senate on January 3, 2019. PN1850— Andrew Saul—Social Security Administration, 115th Cong. (2017-2018). President

III.    *Lucia* **& the Status of ALJs Under the Appointments Clause**

On June 21, 2018, during the period of Berryhill's service as "Acting Commissioner" that occurred after the Saul nomination, the Supreme Court decided *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). In *Lucia* the petitioner had brought an Appointments Clause challenge to the constitutionality of the Securities and Exchange Commission (SEC) ALJ appointments. *Id.* The Supreme Court held that SEC ALJs were Officers of the United States, not merely employees; thus, their appointments by lower-level SEC staff had violated the Appointments Clause. *Id.* at 2055. The Supreme Court held that because the SEC ALJs were not appointed in accordance with the Appointments Clause and petitioner had timely asserted an Appointments Clause challenge, the petitioner was entitled to a new hearing before a different and constitutionally appointed ALJ. *Id.* Following *Lucia*, President Trump issued an Executive Order conceding that "at least some—and perhaps all—ALJs are 'Officers of the United States' and thus subject to the Constitution's Appointments Clause." Exec. Order No. 13,843, 83 Fed. Reg. 32,755 (July 13, 2018).

The SSA also has ALJs. The SSA Commissioner "shall appoint such additional officers and employees as the Commissioner considers necessary to carry out the functions" of the SSA. 42 U.S.C. § 904(a)(1). The Commissioner does this, in part, through the appointment of ALJs tasked with conducting disability benefit hearings. 5 U.S.C. §§ 556, 3105. Prior to *Lucia*, SSA ALJs, like their SEC counterparts, had been selected by lower-level staff. *Carr v. Saul*, 141 S. Ct. 1352, 1357 (2021). On July 16, 2018,

Trump resubmitted Saul's nomination and the Senate confirmed the nomination on June 4, 2019. PN94—Andrew Saul—Social Security Administration, 116th Cong. (2019-2020).

in response to *Lucia*, Berryhill purportedly addressed any Appointments Clause concerns involving Social Security ALJs by "ratif[ying] the appointments" of all SSA ALJs and "approv[ing] those appointments as her own."[4] *See* Social Security Ruling 19-1p, 84 Fed. Reg. 9582-02, 9583 (March 15, 2019) (herein "SSR 19-1"). At the time she purportedly ratified these ALJ appointments Berryhill had served as titular "Acting Commissioner" for a total of 390 days.[5] In March 2019, the SSA issued a ruling that recommended the SSA Appeals Council, in response to timely requests for review, vacate ALJ decisions made prior to Berryhill's purported ratification and provide fresh review by the Appeals Council or "an ALJ other than the ALJ who issued the decision under review." *Id.* However, this remedial action was applied only to claimants who had raised an Appointments Clause challenge in administrative proceedings before either the ALJ or the Appeals Council. *Id.*

## IV.   The Procedural History of Claimant's Case

### A.     The administrative process

In 2015, Claimant applied for disability benefits, alleging he had radiating back pain that prevented him from working. R. 21, 52-53.[6] His application was denied initially and

---

[4] In *Lucia*, the Supreme Court noted that while the case was on judicial review, the SEC issued an Order ratifying the prior ALJ appointments. *Lucia*, 138 S. Ct. at 2055 n.6. The petitioner argued the Order was invalid, but the Supreme Court declined to address the issue stating:

> The Commission has not suggested that it intends to assign Lucia's case on remand to an ALJ whose claim to authority rests on the ratification order. The SEC may decide to conduct Lucia's rehearing itself. Or it may assign the hearing to an ALJ who has received a constitutional appointment independent of the ratification.

[5] This calculation excludes the period from November 17, 2017 to April 17, 2018 (152 days) during which the GAO report found that Berryhill was not properly the "Acting Commissioner."

[6] "R." refers to the Administrative Record. Dkt. No. 11.

on reconsideration. R. 21. On August 14, 2018, ALJ Erin Schmidt[7] held an administrative hearing at which Claimant and a vocational expert testified. R. 42. On October 1, 2018, ALJ Schmidt issued her decision denying Claimant's application for benefits. R. 18. In July 2019, the SSA Appeals Council denied review and the ALJ's October 2018 decision became final. R. 1.

### B.    Proceedings in district court

In September 2019, Claimant timely filed this action seeking review of Defendant's decision. 42 U.S.C. § 405(g); Compl., Dkt. No. 1. On February 4, 2020, Claimant moved for summary judgment seeking reversal of the denial and remand, arguing that the ALJ's decision was wrong on the merits and that the ALJ was without authority because her appointment had violated the Appointments Clause. Cl. Mot. Summ. J. 18-28, Dkt. No. 14.

Like Claimant here, after *Lucia* many Social Security claimants had begun raising Appointments Clause challenges in federal district courts. At the time Claimant commenced this action, all courts within this District[8] and all districts within the Eighth Circuit had held that such arguments had been waived if not raised during the SSA administrative process. *See* Order 4 n.2, n.3, *Wang v. Saul*, No. 18-cv-3144 (D. Minn.

---

[7] At all times relevant to Claimant's administrative proceedings ALJ Schmidt's appointment had been ratified by Berryhill. *See* SSR 19-1. The question in this case is whether ALJ Schmidt's appointment was proper at the time she heard and decided Claimant's case.

[8] *Thomas R. W. v. Saul*, No. 18-cv-3041, 2019 WL 5328786, at *6 (D. Minn. Oct. 3, 2019), *report and recommendation adopted by* 2019 WL 5305494, at *1 (D. Minn. Oct. 21, 2019); *Long M. v. Berryhill*, No. 18-cv-862, 2019 WL 2163384, at *8 (D. Minn. May 17, 2019); *Kimberly B. v. Berryhill*, No. 17-cv-5211, 2019 WL 652418, at *14-15 (D. Minn. Feb. 15, 2019); *Audrey M. H. v. Berryhill*, No. 17-cv-4975, 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); *Catherine V. v. Berryhill*, No. 17-cv-3257, 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019).

Feb. 28, 2020) (herein "*Wang Order*"), Dkt. No. 23. Likewise, most district courts outside the Eighth Circuit had held the same. *See id.* at 6 n.4 (listing non-Eighth Circuit cases). A minority of courts however, had found that Appointments Clause challenges were not waived and could be raised for the first time in federal district court. *See id.* at 7 n.5 (listing non-Eighth Circuit cases).

On February 23, 2020, while Claimant's motion for summary judgment was pending, this Court issued its Order in *Wang v. Saul*, No. 18-cv-3144 (D. Minn. Feb. 28, 2020) declining to follow the decisions that had imposed an exhaustion requirement for raising Appointments Clause challenges. Instead, this court chose to follow the Third Circuit decision in *Cirko v. Comm'r of Social Security*, 948 F.3d 148 (3d Cir. 2020) which had concluded that a claimant need not raise his or her Appointments Clause challenge during the SSA administrative process in order to have it considered by a federal district court. *Wang Order* 14.

In March 2020, Defendant in this case filed a cross-motion for summary judgment arguing, in part, that Claimant's Appointments Clause challenge had been waived by Claimant's failure to raise it during the administrative process. Def. Mot. Summ. J. 15-26, Dkt. No. 16. In May 2020, in response to this Court's Order in *Wang,* Defendant filed a supplemental memorandum arguing the merits of Claimant's Appointments Clause challenge. Order, Apr. 17, 2020, Dkt. No. 26. Defendant asserted the claim lacked merit because Berryhill, as Acting Commissioner, had ratified the ALJs' appointments before ALJ Schmidt had heard Claimant's case and rendered her decision. Because Berryhill was Acting Commissioner at the time of the purported ratification, Defendant argued, she could perform the duties of the vacant principal office including that of appointing inferior

officers such as ALJ Schmidt. Def. Supp., May 15, 2020, Dkt. No. 27. In response, Claimant argued that under the Appointments Clause Berryhill remained an inferior officer even while occupying the position of "Acting Commissioner" and that the FVRA could not constitutionally grant her the authority to appoint ALJs. Cl. Supp. Response, June 15, 2020, Dkt. No. 28. In his brief, Claimant also noted that "Berryhill's authority to act as a Department Head raises some statutory interpretation issues," but argued only the merits of his constitutional claim.[9] *Id.* at 3.

In June and July 2020, the Eighth and Tenth Circuits rendered decisions in several cases, holding that an Appointments Clause challenge must be raised before the SSA or the issue could not be raised in federal district court. *Davis v. Saul,* 963 F.3d 790, 793 (8th Cir. 2020); *Hilliard v. Saul*, 964 F.3d 759, 763 (8th Cir. 2020); *Carr v. Comm'r, SSA*, 961 F.3d 1267, 1268 (10th Cir. 2020). In contrast, the Third, Fourth, and Sixth Circuits had ruled that claimants could raise such a challenge for the first time in federal court. *Cirko*, 948 F.3d at 152; *Probst v. Saul*, 980 F.3d 1015, 1020 (4th Cir. 2020); *Ramsey v. Comm'r of Social Security*, 973 F.3d 537, 546 (6th Cir. 2020). Accordingly, shortly after the parties in this action initially briefed the constitutional issues, the Court stayed this matter pending anticipated review in the Supreme Court of the circuit split on whether Appointments Clause challenges must be exhausted at the agency level in order to raise them in federal district court. Order, July 21, 2020, Dkt. No. 35. On November 9, 2020, the Supreme Court granted certiorari to resolve the circuit split. *Carr*, 141 S. Ct. at 1357.

---

[9] In a footnote, Claimant noted that the use of an automatic succession order to appoint an Acting Commissioner was "problematic" and stated he assumed Berryhill met the FVRA requirements to be eligible to act as Commissioner. Cl. Supp. Response 3 n.1.

On April 22, 2021, the Supreme Court decided *Carr v. Saul*, holding that a claimant could challenge the constitutionality of the ALJ's appointment in federal court without having raised it during the SSA administrative process. *Id.* at 1362. The Supreme Court explained that "the inquisitorial features of SSA ALJ proceedings, the constitutional character of petitioners' claims, and the unavailability of any remedy make clear that adversarial development of the Appointments Clause issue simply did not exist (and could not exist) in petitioners' ALJ proceedings." *Id.* (quotations and alteration omitted). Therefore, it held, lower courts had "erred in imposing an issue-exhaustion requirement on petitioners' Appointments Clause claims" in federal court. *Id.*

After the *Carr* decision, this Court lifted the stay in this matter and Claimant renewed his request that the decision denying him benefits be vacated and that his claim be remanded to a constitutionally appointed ALJ. Order, Apr. 26, 2021, Dkt. No. 38; Cl. Status Rep., Dkt. No. 37. Defendant opposed the request, contending that *Carr* did not govern here because ALJ Schmidt's appointment had been properly ratified before the hearing and decision in Claimant's case. Def. Status Rep, Dkt. No. 40. Defendant argued that under the FVRA an "Acting Commissioner" had clear statutory authority to appoint inferior officers and urged the court to decide the merits of the ALJ's decision denying benefits to Claimant. *Id.*

On June 17, 2021, this Court concluded that the FVRA's plain language authorizes a person properly serving in an acting capacity to carry out the functions and duties of the principal officer. Therefore, as a matter of statutory interpretation, the Court held Berryhill had apparent statutory authority to carry out a duty of the Commissioner when she purported to ratify the ALJ appointments in July 2018. Order 5, June 17, 2021, Dkt. No.

14

41. The Court's Order noted Claimant's prior statement that the manner in which Berryhill had become Acting Commissioner was "problematic" but declined to further address the issue as it had not been fully or properly briefed and argued. *Id.* at 4 n.2. As of the date the Court issued that order, the only issue that remained was whether Berryhill's appointment was unconstitutional and required remand or whether, as Defendant argued, the Court could now review the ALJ's decision on the merits. *Id.* at 6.

In response to the Court's June 17, 2021 Order, Defendant asserted that Berryhill was "validly designated the Acting Commissioner of SSA" in January 2017 under the FVRA, that as Acting Commissioner she was constitutionally able to appoint ALJs, and that her ratification of ALJ Schmidt prior to the decision in Claimant's case cured any potential constitutional defect. Def. Response Brief 1-6, Dkt. No. 49. Claimant argued that Berryhill's ratification was not effective under the cases construing the Appointments Clause because her acting service was not for a "limited time or under special and temporary conditions" as she had purportedly served as "Acting Commissioner" for a total of 542 days. Cl. Response Brief 15-24, Dkt. No. 51. Therefore, he asserted, Berryhill was without the constitutional authority to appoint ALJs and the ratification was *per se* invalid. *Id.* at 24-31. Claimant also argued that, to avoid this constitutional issue, the Court should find the ratification invalid because, at the time of the ratification, Berryhill's service as Acting Commissioner violated the FVRA. *Id.* at 31-40.

Finally, in September 2021, the Court heard oral argument on the issue of the validity and effectiveness of Berryhill's ratification of the SSA ALJs. At the request of the parties, the Court permitted simultaneous supplemental briefing, which was submitted on October 25, 2021. Dkt. Nos. 55, 59. In the supplemental briefing, Defendant argued that

the FVRA includes a "spring-back" provision that allowed Berryhill to resume acting as Commissioner once the President submitted Saul's nomination to be SSA Commissioner. Def. Reply 5-11, Dkt. No. 61. Claimant argued the FVRA contains no such spring-back provision and as a result Berryhill could not properly resume the position of "Acting Commissioner" because she had already surpassed the FVRA's 210-day limit. Cl. Reply 11-20, Dkt. No. 62. Both parties continued to press the constitutional arguments they had previously raised. Timelines of relevant events and how they intersect with the parties' arguments regarding a "spring-back" provision are depicted below:

Timeline:



Claimant Argues: [10]

Defendant Argues:

---

[10] Claimant maintains Berryhill was never properly acting as Commissioner because President Trump did not "direct" her to serve in the role of Acting Commissioner. Cl. Response Brief 32-35, Aug. 28, 2021. This timeline does not incorporate that argument.

**ANALYSIS**

I.    **Berryhill's Status Under the FVRA**

A.    **Introduction**

Claimant asserts both statutory and constitutional challenges to Berryhill's authority to act as SSA Commissioner. Because a fundamental tenet of judicial restraint is that courts must consider nonconstitutional grounds for decisions before reaching constitutional questions, the Court will begin by considering Claimant's statutory challenge under the FVRA. *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1019 (8th Cir. 2004) (citing *Jean v. Nelson*, 472 U.S. 846, 854 (1985)).

The FVRA provides that §§ 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency unless a statutory provision expressly:

> (A) authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or
>
> (B) designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; . . .

or the President appoints someone during a Senate recess. 5 U.S.C. § 3347. "When such an agency-specific statute exists, the FVRA is no longer the 'exclusive' means, but rather is 'a means' of selecting a person to serve in an acting capacity for a vacant PAS office." *Casa de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928, 953 (D. Md. Sept. 11, 2020) (citing *Hooks v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 556 (9th Cir. 2016); G*uedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 356 F. Supp. 3d 109, 143 (D.D.C. 2019) ("Agency-specific statutes like the AG Act were expected to operate alongside the FVRA, not to displace it"), *aff'd on other grounds*, 920 F.3d 1, 12 (D.C. Cir. 2019) (per curiam)).

17

Here, a Social Security Act provision expressly states, "The Deputy Commissioner shall be Acting Commissioner of the Administration during the absence or disability of the Commissioner and, unless the President designates another officer of the Government as Acting Commissioner, in the event of a vacancy in the office of the Commissioner." 42 U.S.C. § 902(b)(4). This provision both authorizes the President to designate an officer to act as SSA Commissioner and, if the President does not do so, designates an officer—the Deputy Commissioner—to act as Commissioner. *Id.* Because this is an SSA-specific statute, the FVRA is not the "exclusive" means to appoint an Acting SSA Commissioner. *Casa de Md.*, 486 F. Supp. 3d at 953. Neither party argues Berryhill acted as Commissioner pursuant to the Social Security Act; rather both parties have consistently asserted that her service is governed by the FVRA. Additionally, Defendant argues that President Obama's Succession Memo provided Berryhill the authority to act as Commissioner. The Succession Memo expressly invokes the FVRA and does not reference the Social Security Act. It is conceivable that Berryhill's authority to act as SSA Commissioner derived from § 902(b)(4) of the Social Security Act, however there is nothing in the record before the Court to allow such a finding. Because Defendant does not contend this is so, for purposes of this decision, the Court assumes without deciding that Berryhill's acting service was pursuant to the FVRA.

This Court previously concluded that the FVRA's plain language authorizes a person who is properly serving in an acting capacity to temporarily carry out the functions and duties of the principal office, with no exception for the function of appointing inferior officers. Order 5, June 17, 2021. However, because at that time the parties' arguments focused solely on the constitutional issues, the Court did not determine whether Berryhill

in fact was **properly** serving as Acting SSA Commissioner under the FVRA when she ratified ALJ Schmidt's appointment. To do so, this Court must again interpret the FVRA.

Claimant argues Berryhill was not properly serving as Acting Commissioner at the time of her purported ratification because President Trump had never directed her to act as Commissioner and because she had exceeded the 210-day limit imposed by the statute before Saul was nominated to fill the vacancy. Once Saul was nominated, Claimant argues, Berryhill could not resume the role of Acting Commissioner because her term had already expired. That is, Claimant argues that while the FVRA allows someone to serve more than 210 days if a permanent office holder is nominated before the initial period of 210 days expires, § 3346(a)(2) of the FVRA merely tolls the running of the 210-day period and does not resurrect a term that has already expired. Cl. Reply 4-27. In contrast, Defendant asserts that § 3346(a)(2) is a "spring-back" provision which allowed Berryhill to return as Acting Commissioner once President Trump submitted Saul's nomination to the Senate on April 17, 2018. Defendant argues that because the word "or" in § 3346(a)(2) is disjunctive it "establishes alternative periods of permissible service." Thus, Saul's nomination allowed Berryhill to resume the role of Acting Commissioner once the nomination was submitted. Def. Reply 4, 11-14. As discussed in detail below, Defendant's conclusion is wrong. As is clear from the language, structure, and history of the FVRA, § 3346 does not establish **alternative** periods of permissible service. Rather, § 3346 establishes a unified period of permissive service that may be tolled in certain circumstances.

Statutory interpretation begins with the statute's plain language, which must be read within its broader context. *Designworks Homes, Inc., v. Columbia House of Brokers*

*Realty, Inc.*, 9 F.4th 803, 806-07 (8th Cir. 2021); *N.L.R.B.*, 137 S. Ct. at 938. As a corollary, it is a basic tenet of statutory construction that different sections of the same chapter are presumably intended to work together and must be read as such. *Center for Special Needs Trust Admin., Inc. v. Olson*, 676 F.3d 688, 702 (8th Cir. 2012).

The beginning point for a full understanding of the FVRA, and how § 3346 works within it, is § 3345. Section 3345 provides for the automatic designation of an acting officer when a vacancy in a principal office arises:

> If [a PAS] officer . . . dies, resigns, or is otherwise unable to perform the functions and duties of the office . . . the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346.

5 U.S.C. § 3345(a)(1). This section also authorizes "the President (and only the President)" to "direct" someone other than the first assistant to be the acting officer, but that person too is "subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(2), (3).

The statute expressly contemplates that a PAS vacancy will be temporarily filled by the first assistant—at least in the ordinary course—as soon as the vacancy. The President is free to direct a different person to serve. Indeed, that is what Defendant in this case asserts happened. Defendant contends Berryhill became Acting Commissioner, at the direction of the President by operation of the Succession Memo, as soon as the vacancy arose due to the resignation of Deputy Commissioner Colvin (who was in the role of Acting Commissioner). In short, § 3345 provides a mechanism by which an Acting Commissioner fills the vacancy at or very nearly at the moment the vacancy arises. *See L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 7 (2020) (citing § 3345 for the proposition that the first assistant "automatically serves as the acting official when a vacancy arises").

20

**B.      Did President Trump direct Berryhill to act as SSA Commissioner?**

A first assistant to the vacant PAS office "shall perform the functions and duties" as an acting officer. 5 U.S.C. § 3345(a)(1). Berryhill was never the Deputy Commissioner and therefore did not assume the position of Acting Commissioner by that route. The statute also provides that in lieu of the first assistant serving as Acting Commissioner, "the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346," if certain criteria are met. *Id.* § 3345(a)(3).

Claimant argues that Berryhill was not properly serving as Acting Commissioner because President Trump—who was "the President" at the time Berryhill assumed the role of Acting Commissioner—had not "directed" her to fill the vacancy. Cl. Response Brief 32-35. Rather, Claimant argues, it was former President Obama's Succession Memo that caused Berryhill's service as Acting Commissioner, not any direction by President Trump. *Id.* Because President Obama was not "***the*** President" at the time the vacancy occurred, Claimant asserts, his Succession Memo had no force or effect under the FVRA. *Id.* Defendant responds by arguing that President Trump was free to alter the line of succession, to disregard the Succession Memo and select another Acting Commissioner, or to replace Berryhill during her service. Def. Reply 5-11. Because President Trump did none of those things, Defendant argues, he chose to follow the Succession Memo and therefore "directed" Berryhill's service. *Id.*

Whether the FVRA required President Trump to perform some affirmative act in order to "direct" Berryhill's service is an important issue that appears to be one of first impression. The arguments on both sides of the issue are not frivolous. For purposes of this decision, however, the Court assumes without deciding, that the fact that President Trump did not repeal President Obama's Succession Memo or appoint someone else as Acting Commissioner is an act sufficient to satisfy the FVRA's requirement that he "direct" Berryhill's service.

### C.    Berryhill's length of service under 5 U.S.C. § 3346

Section 3346, entitled "Time limitation,"[11] provides:

(a) Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—

(1) for no longer than 210 days beginning on the date the vacancy occurs; *or*

(2) subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

(b)    (1) If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person *may continue to serve* as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return.

(2) Notwithstanding paragraph (1), if a second nomination for the office is submitted to the Senate after the rejection, withdrawal, or return of the first nomination, the person serving as the acting officer *may continue to serve*—

(A) until the second nomination is confirmed; or

---

[11] That the title of the section uses the singular ("Time limitation") rather than the plural ("Time limitations") may indicate there is a single period of service for which the time is limited and defined. *See Northshore Min. Co. v. Sec'y of Labor*, 709 F.3d 706, 710 (8th Cir. 2013) (stating section titles are tools available to resolve doubt, though titles do not undo or limit what text makes plain).

> (B) for no more than 210 days after the second nomination is rejected, withdrawn, or returned.

5 U.S.C. § 3346 (emphasis added).

> Finally, § 3348 provides:

> Unless an officer or employee **is performing** the functions and duties in accordance with sections 3345, 3346, and 3347, [and there is a PAS vacancy]—

>> (1) the office shall remain vacant; and

>> (2) in the case of an office other than the office of the head of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office), only the head of such Executive agency may perform any function or duty of such office.

*Id.* § 3348(b) (emphasis added).

Assuming President Trump "directed" Berryhill to fulfill the role of Acting Commissioner, the question becomes whether her service was proper under the FVRA during the period Saul's nomination was pending. This question turns on the meaning of § 3346(a) and whether § 3346(a)(2) is a tolling provision or a "spring-back" provision.

Courts have frequently looked to Congress' choice of verb tense to interpret statutes. *Carr v. U.S.*, 560 U.S. 438, 447 (2010). When a Court is determining the meaning of an Act of Congress, the present tense generally does not include the past. *Id.* (citing the Dictionary Act, 1 U.S.C. § 1). Congress, in enacting § 3346, used the present participle "serving," rather than the past or present perfect "served" or "has served." Section 3346(a) applies to "the person serving as an acting officer" under § 3345. By its terms, then, the section applies to the person presently serving in that capacity and not to a person who had previously served as Acting Commissioner. Berryhill was "the person serving as an acting officer" from January 20, 2017 until November 16, 2017 when her

term expired.[12] When Saul was first nominated to become Commissioner on April 17, 2018, Berryhill was not then serving as Acting Commissioner and Saul's nomination did not create a new vacancy. Therefore, by its plain language, § 3346(a)(2) does not apply to Berryhill because she was not serving as Acting Commissioner when Saul was nominated.

This result is supported not only by the language of § 3346 but also its structure and context. *See Carr*, 560 U.S. at 449 (stating undeviating use of present tense is striking indicator of a statute's prospective orientation). Subsection (b)(1) states that if a nomination is rejected, withdrawn, or returned, "the person may ***continue to serve*** as the acting officer for no more than 210 days." 5 U.S.C. § 3346(b)(1) (emphasis added). Subsection (b)(2) states that if a second nomination is unsuccessful, "the person ***serving*** as the acting officer may ***continue to serve***." *Id.* § 3346(b)(2) (emphasis added). Therefore, the plain language of § 3346, indicates that the use of the present participle is deliberate—only a person presently serving may continue to serve. The plain language of § 3346(a)(2) means that it only applies to a person presently serving as Acting Commissioner if at the time of nomination, someone "is performing the functions and duties" in accordance with the FVRA. There is no good reason for construing the word "serving" when used in the first paragraph of § 3346(a) differently than when it is used in § 3346(b).

Here, Berryhill surpassed the FVRA's 210-day limit on November 17, 2017. GAO Letter 2. Defendant concedes that Berryhill then ceased her acting service as

---

[12] The FVRA provides for an additional 90 days when, as in this case, there is a vacancy within 60 days of a transitional inauguration day. 5 U.S.C. § 3349a. Thus, Berryhill could serve no longer than 300 days from when the vacancy arose.

Commissioner and returned to her position as DCO. Def. Reply 4. When Saul was nominated, no one was performing the functions and duties of the Commissioner under the FVRA. Thus, Berryhill does not come within the terms of § 3346(b). Moreover, § 3348 confirms this reading. *Center for Special Needs*, 676 F.3d at 702. Unless someone "is performing the functions and duties" in accordance with the FVRA, the PAS office "shall remain vacant" until the PAS-appointment is complete. 5 U.S.C. § 3348(b)(1), (b)(2). Therefore, the FVRA plainly directs that in the circumstances presented "the office shall remain vacant." *Id.* § 3348(b)(1).

That this plain language interpretation is correct is borne out by the structure and operation of § 3346. *Designworks Homes*, 9 F.4th at 806-07. Section 3346(a)(1) limits the Acting Commissioner's tenure to 210 days from the date the vacancy arises. The fact that this period begins to run on the date the vacancy arises reflects the fact that the FVRA's § 3345 provides for automatic filling of such a vacancy upon the vacancy's creation. *Cuccinelli*, 442 F. Supp. 3d at 7. If there is no statutorily designated automatic successor (i.e., no first assistant) and the President later appoints someone to act as the PAS officer, that person's term still ends 210 days after the vacancy arose.[13] That the period begins to run from the date the vacancy arises provides the incentive for prompt appointment of an Acting Commissioner. That the person serving in that role may only serve until 210 days from the date the vacancy arose unless a nomination is made provides the incentive for prompt nomination.

---

[13] Problems that might arise by a failure of automatic ascension to the position of acting PAS officer are, of course, the reason why Presidents adopt succession memos of the kind approved by President Obama. And indeed that Succession Memo, assuming it was effective under the FVRA, meant that Berryhill became acting commissioner the day the vacancy arose.

This is where § 3346(a)(2) comes in. This section *extends* that initial period of service if, during that 210 days, a nominee for the office is named. Once that happens the person serving as Acting Commissioner may continue to serve during the pendency of the nomination even if this period extends beyond 210 days from the date the vacancy arose: once the nomination is submitted to the Senate "the person . . . may serve in the office . . . from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a). Thus, because subsection (a)(2) allows an acting officer to serve from the date the vacancy arose until the date the nominee is confirmed by the Senate, it incentivizes the President to promptly nominate someone to fill the vacant office to ensure the office's functions and duties continue to be performed.

Subsection (b) addresses what happens if the nominee is not confirmed: "If the first nomination for the office is rejected by the Senate, withdrawn, or returned to the President by the Senate, the person may continue to serve as the acting officer for no more than 210 days after the date of such rejection, withdrawal, or return." *Id.* § 3346(b)(1). Subsection (b)(1) resets the clock so that the President once again has a full 210 days in which to make a second nomination. If a second nomination is made during this 210-day period, then, under subsection (b)(2) the acting officer may serve until confirmation or, if the second nomination fails, for a final period of 210 days from the date of rejection, withdrawal, or return. Read together in this fashion, § 3346 allows for seamless, continuous exercise of the functions and duties of the PAS office from the date a vacancy arises until the date the Senate confirms a permanent replacement, *if*—but only if—the President acts with reasonable dispatch. In short, § 3346 sets a single "time

limitation" on the term an acting officer may serve but tolls that period of service if the President promptly nominates a permanent replacement.

Defendant, however, argues § 3346(a)(2) allowed Berryhill to resume acting as Commissioner (that is, to "spring back" into that position) when President Trump nominated Saul, even though her initial statutory term had expired and she had stepped down from the Acting Commissioner position. By Defendant's logic, an acting officer could serve a 210-day term from the date of the vacancy, step down for an undefined (and potentially quite lengthy) period, resume the role of acting officer when a nomination is made, step down again 210 days after that nominee is rejected, and after another undefined period, resume the role of acting officer when a second nominee is named. This is because, according to Defendant, § 3346 uses the word "or."

But this interpretation misreads the statutory language. The word "or" modifies the entire provision that limits the acting officer to a period "no longer than" 210 days from the date the vacancy arose. Thus, when read with the entirety of subsection (a)(1) "or" serves to suspend that time limitation, not to create an entirely separate and distinct period of service.

A person serving as an acting officer may do so "for no longer than 210 days beginning on the date the vacancy occurs; *or* . . . once a first or second nomination for the office is submitted to the Senate," during the pendency of that nomination. *Id.* § 3346(a) (emphasis added). The ordinary usage of the word "or" is disjunctive, indicating an alternative. *United States v. Smith*, 35 F.3d 344, 346 (8th Cir. 1994). In this statute "or" serves to provide an alternative **length** of service not to create a series of non-contiguous periods of service. If the statute were read to create three distinct periods of service—the

initial 210 days, the first nominee period, and the second nominee period—the statute would have used the word "and" to separate the three periods of service.

Construing the word "or" to mean "and," as Defendant argues for here, is conjunctive and "clearly in contravention of its ordinary usage." *Id.* The plain reading and ordinary usage of the word "or" in § 3346(a) is that a person serving as Acting Commissioner may serve for a 210-day period from the start of the vacancy, *or* if the person is already "serving as acting officer" according to the FVRA, may continue serving during the pendency of a timely nomination. The 210-day period is a limitation on Berryhill's acting service and after the 210-day limitation had expired, she could not later return to acting service, turning § 3346's "or" into an "and."

Moreover, Defendant's reading of § 3346 would contradict § 3348. *Center for Special Needs*, 676 F.3d at 702. To accept Defendant's interpretation of § 3346(a)(2) would require the Court to ignore (or rewrite) § 3348 which states "Unless an officer or employee **is performing** the functions and duties in accordance with sections 3345, 3346, and 3347 . . . the office **shall** remain vacant." 5 U.S.C. § 3348(b)(1) (emphasis added). Defendant interprets § 3346 as providing a person with authority to serve in an acting role (as distinct from merely defining the length of that service). But as discussed above, it is § 3345 that provides the authority to act as an officer, while § 3346 merely defines the period of that service. Section 3348 requires that someone "is performing the functions and duties in accordance with sections 3345, 3346, and 3347." Someone cannot avoid § 3348's directive that the "office shall remain vacant" by invoking § 3346 as authority to serve as acting officer because § 3348 requires that person to already be

performing duties according to §§ 3345, 3346, and 3347. Thus, the broader context of the FVRA further supports the Court's interpretation. *Designworks Homes*, 9 F.4th at 807.

This Court's plain language of the statute is consistent with the doctrine of constitutional avoidance, which requires courts to construe a statute, if possible, to avoid a serious constitutional question. *Office of Senator Mark Dayton v. Hanson*, 550 U.S. 511, 514 (2007); *see Pub. Citizen v. U.S. Dep't of Justice,* 491 U.S. 440, 466 (1989) ("It has long been an axiom of statutory interpretation that where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." (internal quotation marks omitted)); *Edmond*, 520 U.S. at 658 (avoiding interpretation that would render statute unconstitutional). Claimant's Appointments Clause challenge as it relates to the FVRA presents serious constitutional questions such as whether the length of acting service allowed under the FVRA violates the Appointments Clause. *N.L.R.B.*, 137 S. Ct. at 946 (Thomas, J., concurring) (suggesting that the FVRA raised "grave constitutional concerns"). Even if the FVRA's plain language is ambiguous—contrary to this Court's conclusion—the Court has no difficulty construing the FVRA to avoid such a constitutional question. Berryhill's purported ratification was statutorily ineffective because Berryhill's period of acting service had expired and the FVRA did not allow her to resume acting as Commissioner at a later date. Thus, the Court's construction also avoids the question whether a post-appointment ratification satisfies the strictures of the Appointments Clause.

D.      **Other considerations**

Defendant contends that legislative history, other judicial decisions, general practice, and practical considerations confirm § 3346(a)(2) is a "spring-back" provision. Def. Reply 1-13. A Court need not consult extratextual sources when the meaning of a statute's terms is clear. *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2469 (2020). Such materials may only help clear up, not create ambiguity about a statute's original meaning. *Id.* Because the FVRA's terms are clear the Court need not consider Defendant's additional arguments, but finds them unpersuasive nonetheless. *N.L.R.B.*, 137 S. Ct. at 942.

First, Defendant asserts the 1998 Senate Report regarding the FVRA bill establishes that § 3346(a)(2) is a "spring-back" provision. The Senate Report states that an officer may serve while a nomination is pending even if a President fails to submit a nomination within § 3346(a)(1)'s limitation period.[14] Defendant argues that because the Senate Report's draft language of § 3346(a)(1)-(2) was enacted absent any edits, the legislature must have known of and agreed with the Senate Report's suggestion that § 3346(a)(2) was a "spring-back" provision. Def. Reply 13-14. But this argument ignores critical aspects of the Senate Report.

The Senate Report expressed concern over the consequences that may arise if a President failed to nominate someone within the statutorily prescribed time frame. It addressed that concern by drafting the language of § 3348 to state:

> if the President does not submit a first nomination to the Senate to fill a vacant office within 150 days after the date on which a vacancy occurs—

---

[14] The FVRA draft considered in the Senate Report had a 150-day limitation period, however the FVRA as enacted increased the service period to 210 days. Publ. L. 105-277, § 151, 112 Stat. 2681 (Oct. 21, 1998).

> (A) the office shall remain vacant until the President submits a first nomination to the Senate[.]

Senate Report 28. Section 3348 was to act as "an enforcement mechanism," requiring that, if the President failed to submit a nomination within the time limitation set forth in § 3346(a)(1), the office was to remain vacant "***until*** the President submits a first nomination." *Id.* (emphasis added). This language did not make it into § 3348. Defendant argues that its removal necessarily demonstrates that the Senate considered its inclusion as mere surplusage, unnecessary because § 3346 already allowed for a formerly acting officer to automatically spring back into the role of acting officer once a nomination was made. Def. Reply 13-14.

There is an equally plausible, if not more plausible, explanation for removal of the draft language from § 3348. The original inclusion of the language reflected the fact that the Senate understood that § 3346(1)(b) alone did not allow for a "spring back," and that additional language was necessary. The elimination of that language from the final bill may simply mean that Congress did not intend to allow such a spring back. After all, the FVRA was designed to incentivize prompt nomination and to reduce the number of acting officials. Senate Report 15. The FVRA's final text does not include the express "spring-back" language. Publ. L. 105-277, § 151, 112 Stat. 2681 (Oct. 21, 1998). Enacting the FVRA included a "period of intense negotiations" and resulted in "a compromise measure." *N.L.R.B.*, 137 S. Ct. at 942. "What Congress ultimately agrees on is the text that it enacts, not the preferences expressed by certain legislators." *Id.*

Here, the Senate Report shows that the Senate considered allowing an officer who had previously acted as Commissioner to return to acting service upon a nomination to the Senate, however Congress chose not to include such language in the final, enacted

31

version of the FVRA. Certainly, the original language of § 3348 demonstrates that if Congress had intended the FVRA to contain a spring-back provision they were able to craft such language to clearly and unambiguously express that intent. At best the reliance on the Senate Report illustrates the folly of attempting to discern legislative intent from statements made during the legislative process. *See id.* at 942-93; *see also Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) ("When presented, on the one hand, with clear statutory language and, on the other, with dueling committee reports, we must choose the language.")

Next Defendant argues that the Executive Branch and other courts have understood the FVRA to include a "spring-back" provision. Defendant cites a 1999 Memorandum Opinion by the Office of Legal Counsel (herein "OLC Opinion") and several judicial decisions as support. Def. Reply 1, 14. The OLC Opinion, which was meant to provide guidance on the application of the FVRA, states that the FVRA "incorporates a spring-back provision" and allows an acting officer to "again [] perform the functions and duties of the office as of the date the nomination is submitted." 23 Op. O.L.C. 60, 68 (Mar. 22, 1999) (citing 5 U.S.C. § 3346(a)(2)). The OLC Opinion engaged in no analysis and made only conclusory statements regarding the issue. *Id.*; *see N.L.R.B.*, 137 S. Ct. at 943 (stating same OLC Opinion "made conclusory statements . . . with no analysis"). The Court finds the OLC Opinion, and Defendant's reliance on it, unpersuasive. Though the Executive Branch may have understood the FVRA to contain a "spring-back" provision (an interpretation which served its interests) and acted according to that understanding, "[u]nlawful acts, performed long enough and with sufficient vigor, are never enough to amend the law." *McGirt*, 140 S. Ct. at 2482.

Defendant also cites judicial opinions, some of which have relied on the OLC Opinion to conclude that § 3346(a)(2) is a "spring-back" provision. But those decisions, like the OLC Opinion itself, merely assert the existence of a "spring-back" provision rather than engage in an analysis of the statute. *See Hutchens v. Kijakazi*, No. 1:20-cv-1124, 2021 WL 5834409, at *7 (M.D. N.C. Dec. 9, 2021) (citing the OLC Opinion to find a spring-back provision); *Patterson v. Berryhill*, No. 2:18-cv-00193, 2018 WL 8367459 at *1 (W.D. Pa. June 14, 2018) (citing party's briefing and § 3346(a)(2) with no analysis). Other decisions merely cite back to *Patterson* as the basis for finding a "spring-back" provision. *Heins v. Saul*, No. 19-cv-2043, 2020 WL 6052583, at *21 n.18 (N.D. Iowa June 11, 2020); *Reuter v. Saul*, No. 19-cv-2053, 2020 WL 7222109, at *15 n.11 (N.D. Iowa May 29, 2020); *Austin v. Saul*, No. 19-cv-3017, 2020 WL 5229540, at *16 n.7 (N.D. Iowa May 12, 2020); *Marion v. Saul*, No. 19-cv-76, 2020 WL 2482124, at *26 n.17 (N.D. Iowa Apr. 21, 2020). The conclusory nature of these opinions fails to persuade this Court to abandon the clear statutory language of § 3346.

There are other judicial opinions that conclude Berryhill's ratification was effective but gave the issue a cursory review or failed to directly address it. Defendant cites *Cirko v. Commissioner of Social Security* in which the Third Circuit stated a remand of the Appointments Clause issue would be reviewed by "the now-duly-appointed Appeals Council." 948 F.3d at 159. The decision does not consider whether Berryhill was properly acting as Commissioner and simply cites to SSR 19-1, which was drafted by the SSA and merely states that Berryhill ratified the ALJ appointments. *Id.* Defendant cites to other Circuit Court opinions that likewise rely on SSR 19-1 to conclude Berryhill's ratification was effective and cured any constitutional defect. Def. Response Brief 6 (citing *Probst v.*

*Comm'r*, 980 F.3d 1015, 1024 (4th Cir. 2020); *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537, 544 (6th Cir. 2020)); *see also Mary v. Kijakazi*, No. 3:20-cv-656, 2021 WL 3910003, at *10 (D. Conn. Sep. 1, 2021) (concluding Berryhill's purported ratification remedied unconstitutional appointment without analyzing whether Berryhill was properly acting as Commissioner under the FVRA); *Donta v. Saul*, No. 2:20-cv-131, 2021 WL 3705145, at *7-8 (E.D. Va. Apr. 2, 2021) (stating it is "common understanding that [Berryhill's] ratification addressed potential Appointments Clause challenges"); *Charles v. Berryhill*, No. 1:18-cv-02013, 2019 WL 667760, at *n.2 (S.D. Ind. Feb. 15, 2019) (citing *Patterson*, 2018 WL 8367459 and 5 U.S.C. § 3346(a)(2) to find that Berryhill resumed service as Acting Commissioner after Saul's nomination). These cases simply do not address the statutory interpretation of § 3346(a)(2). As it did with the exhaustion issue, this Court declines to follow the other courts' decisions that conclude Berryhill's purported ratification was effective. *See Wang Order* 14.

Moreover, this Court's analysis of the FVRA is consistent with the Supreme Court's opinion in *N.L.R.B. v. SW General*. Though that decision interpreted § 3345 rather than § 3346, the parties' arguments are similar and the Supreme Court's analysis is instructive. *N.L.R.B.*, 137 S. Ct. at 938-44. The Supreme Court applied the statute's clear language to find that the statute applied to all types of officers, not only first assistants. *Id.* It rejected the argument that Congress had not objected when a President's nomination violated the plain language of the statute. *Id.* at 943. Congress's failure to object did not imply acquiescence in the asserted statutory interpretation. *Id.* The Supreme Court also rejected the argument relying on the OLC Opinion and a GAO guidance that both construed the statute as applying only to first assistants, stating the guidance documents

"paid the matter little attention" and "made conclusory statements about [the section] with no analysis." *Id.* The same is true here.

Finally, Defendant argues that concluding Berryhill did not validly ratify the ALJ appointments will "substantially burden the SSA's already-taxed adjudicative system." Def. Reply 27. To be sure, the Court's decision today will place **some** burden on the SSA to provide hearings before constitutionally appointed ALJs. Even so, the scope of that burden is exaggerated by Defendant. The only Claimants who may benefit from this decision must have received an adverse ALJ decision, timely appealed to the SSA Appeals Council, had their review denied, then timely filed a claim in federal court, did not obtain a remand on the merits, and raised a timely challenge to Berryhill's ratification. Claimant asserts that in 2020, there were 353,919 claimants nationwide who received an adverse ALJ decision. Cl. Reply 33. Of those, only 19,454 claimants sought review in federal district court. *Id.* District courts granted 9,655 relief on the merits, leaving at most 9,799 cases this decision may impact. *Id.* Even assuming each one of those cases had raised a timely challenge to Berryhill's ratification, this would result in new hearings in what amounts to less than three percent of all 2020 claimants nationwide. Such a burden does not justify this Court ignoring the statute's clear language.

Administrative inconvenience may result from this decision, however, as the Supreme Court recently reiterated, "pleas of administrative inconvenience . . . never justify departing from the statute's clear text." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1485 (2021). "In any event, the magnitude of a legal wrong is no reason to perpetuate it." *McGirt*, 140 S. Ct. at 2480. Because the FVRA's text is clear, any administrative inconvenience to the SSA cannot justify departing from the statute.

E.    **Conclusion**

As a matter of statutory interpretation, Berryhill's purported ratification is ineffective because under the FVRA, she was not properly acting as the Commissioner at that time.[15] Since the ALJ was not properly appointed she lacked the authority to hear and decide Claimant's case, thus the ALJ's decision is vacated. *See Carr*, 141 S. Ct. at 1357; *Lucia*, 138 S. Ct. at 2055. Claimant's disability claim is therefore remanded to the SSA for a new hearing before a ***properly appointed*** ALJ other than the one who presided over the first hearing. *Lucia*, 138 S. Ct. at 2055. Because the Court concludes Berryhill's purported ratification was ineffective, this Court need not address other issues raised by Claimant, including whether any part of Berryhill's service as Acting Commissioner violated the Appointments Clause. *Ehlis*, 367 F.3d at 1019.

Claimant also argues the ALJ failed to provide good reasons for finding him not credible and asks the Court to reverse the ALJ's decision on the merits and remand the claim for further proceedings. Cl. Mot. Summ. J. 18-24. Because this Court vacates the

---

[15] Under a plain reading of the FVRA, the Court questions whether—if Berryhill had been properly serving as Acting Commissioner—she could have ratified the ALJ appointments. Section 3348(d) states:

> (1) An action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and [certain other FVRA sections] apply shall have no force or effect.

> (2) An action that has no force or effect under paragraph (1) may not be ratified.

If ALJ Schmidt was appointed during a vacancy by a lower-level staff, *Carr*, 141 S. Ct. at 1357, the appointment would "have no force or effect." If the appointment has no force or effect, it "may not be ratified" under the FVRA. This Court need not decide the issue and does not assume ratification by a properly serving Acting Commissioner would cure Appointments Clause issues in this case.

entire decision due to the FVRA and remands for a hearing before a new ALJ, Claimant will necessarily have a renewed opportunity to present his claim to the SSA and the ALJ will be required to look anew at the record, receive testimony, and make a decision as to Claimant's credibility.

## ORDER

The Court, being duly advised in the premises, upon all the files, records, and proceedings herein, now makes and enters the following Order.

**IT IS HEREBY ORDERED**:

1.      Claimant's Motion for Summary Judgment [Dkt. No. 13] is **GRANTED**. The Commissioner's decision is **VACATED** in its entirety and this case is **REMANDED** for a new hearing before a properly appointed ALJ who is not the same ALJ that presided over Claimant's first hearing.

2.      Defendant's Motion for Summary Judgment [Dkt. No. 15] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**


Dated: January 20, 2022                     __s/ David T. Schultz_____
                                            DAVID T. SCHULTZ
                                            U.S. Magistrate Judge